UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ OCT 2 2 2019 ★

BROOKLYN OFFICE

UNITED STATES OF AMERICA

v.

FABIAN EMILIO ZAPATA TABORDA,
a.k.a. "Milo,"
a.k.a. "Milito"

Case No. CR-19-212

AFFIDAVIT IN SUPPORT OF
REQUEST FOR EXTRADITION

I, Francisco J. Navarro, being duly sworn, depose and state:

1.   I reside in the United States of America.

2.   In May 2003, I received a Juris Doctor degree from Georgetown University Law Center in

Washington, District of Columbia, and was admitted to the bar of the state of New York in

January 2004.

3.   From 2003 to 2013, I was employed as an attorney with private law firms in New York,

New York.  From 2013 to 2018, I was employed as an Assistant United States Attorney for

the District of New Jersey.  From 2018 to the present, I have been employed as an Assistant

United States Attorney for the Eastern District of New York.   As an Assistant United

States Attorney, my duties include the prosecution of persons charged with criminal

violations of the laws of the United States.  Based on my training and experience, I am

familiar with the criminal laws and procedures of the United States.  During my tenure in

the United States Attorney's Offices, I have become particularly knowledgeable in the area

of criminal law relating to violations of the federal controlled substance statutes, including

conspiracy to distribute a controlled substance in locations outside the United States with

the knowledge or intent that the controlled substance would be unlawfully imported into the United States.

4. In the course of my official duties, I have become familiar with the charges and evidence against Fabian Emilio ZAPATA TABORDA, alias "Milo" and "Milito" (ZAPATA TABORDA), in the case entitled <u>United States of America v. Fabian Emilio Zapata Taborda</u>, Case Number CR-19-212, which arose from an investigation into a drug trafficking organization of which ZAPATA TABORDA is a member.

## I. THE GRAND JURY PROCESS

5. Under the laws of the United States, a criminal prosecution may be commenced by a grand jury on its own decision to return and file an indictment with the Clerk of the U.S. District Court. The grand jury is an independent body that is impaneled and supervised by the judicial branch of the U.S. government. A grand jury is composed of at least 16 and no more than 23 people whom the U.S. District Court selects at random from the residents of that district.

6. The purpose of the grand jury is to view the evidence of crimes presented to it by U.S. law enforcement authorities. After independently viewing this evidence, each member of the grand jury must determine if there is probable cause to believe that a crime has been committed, and that the particular defendant committed the crime. A grand jury returns an indictment when at least 12 grand jurors have voted in favor of an indictment. An indictment is a formal document that charges the defendant with a crime or crimes, describes the specific laws that the defendant is accused of violating, and describes the acts of the defendant that are alleged to be violations of the law. After the grand jury returns the indictment, a warrant for the defendant's arrest generally is issued by the Clerk of the Court

upon the instruction of a U.S. district or magistrate judge.

## II. THE CHARGES AND PERTINENT LAW

7.    On May 8, 2019, a federal grand jury sitting in the Eastern District of New York returned and filed an Indictment against ZAPATA TABORDA, charging him with the following offense: in Count One, with conspiracy to distribute five kilograms or more of cocaine in a place outside the United States, intending and knowing that the cocaine would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959(a), 963, 960(a)(3), and 960(b)(1)(B)(ii); and Title 18, United States Code, Sections 3238 and 3551 *et seq.* Page 2 of the Indictment incorrectly cites to Title 21, United States Code, Section 959(c), rather than the correct citation, Title 21, United States Code, Section 959(a). This minor typographical error neither affects the validity of the Indictment, nor the extradition documents. The relevant text of the correct penalty statute is included in the applicable statutes exhibit. Cocaine is a Schedule II controlled substance pursuant to Title 21, United States Code, Section 812. The Indictment also contains a forfeiture allegation citing Title 21, United States Code, Sections 853(a) and (p), and 970. ZAPATA TABORDA has not been previously prosecuted, convicted, or ordered to serve a sentence for the offense for which extradition is sought.

8.    The relevant portions of the applicable statutes are attached to this affidavit as **Exhibit A.** Each of these statutes was duly enacted and in force at the time the offense was committed and at the time the Indictment was returned, and they remain in full force and effect as to the conduct charged. The relevant criminal offense charged in the Indictment constitutes a felony under the laws of the United States.

9.    I have also included as part of **Exhibit A** the relevant portion of Title 18, United States

Code, Section 3282, which is the statute of limitations for the crimes charged in the Indictment. The statute of limitations requires that a defendant be formally charged within five years of the date that the offense or offenses were committed. Once an indictment has been filed in a federal district court, as with the Indictment against ZAPATA TABORDA, the statute of limitations is tolled and no longer runs. This prevents a criminal from escaping justice by simply hiding and remaining a fugitive for an extended period of time. In addition, under the laws of the United States, the statute of limitations for a continuing offense, such as conspiracy, begins to run from the conclusion or completion of the offense, not from the date it commenced.

10. I have thoroughly reviewed the applicable statute of limitations, and the prosecution of the charge in this case is not barred by the statute of limitations. Because the Indictment, which was returned and filed on May 8, 2019, charges an offense which occurred from in or about December 2013 through September 2014, ZAPATA TABORDA was formally charged within the five-year time period specified in the statute of limitations.

11. Based on the charge in the Indictment, on May 8, 2019, the U.S. District Court for the Eastern District of New York issued a warrant for the arrest of ZAPATA TABORDA. This arrest warrant remains valid and executable.

12. It is the practice of the U.S. District Court for the Eastern District of New York to retain original indictments and arrest warrants and file them with the records of the Court. Therefore, I have obtained certified copies of the Indictment and arrest warrant from the Clerk of the Court and have attached them to this affidavit as **Exhibit B** and **Exhibit C**, respectively.

13. ZAPATA TABORDA is charged in the Indictment with the offense of conspiracy. Under

U.S. law, a conspiracy is an agreement to violate other criminal statutes. In other words, under U.S. law, the act of combining and agreeing with one or more persons to violate U.S. law is a crime in and of itself. Such an agreement need not be formal and may be simply a verbal or non-verbal understanding. A conspiracy is deemed to be a partnership for criminal purposes in which each member or participant becomes the agent or partner of every other member. A person may become a member of a conspiracy without full knowledge of all of the details of the unlawful scheme or the names and identities of all of the other alleged co-conspirators. Consequently, if a defendant has an understanding of the unlawful nature of a plan and knowingly and willfully joins in that plan on at least one occasion, that is sufficient to convict him of conspiracy, even if he had not participated before and even if he played only a minor part. Similarly, a defendant need not be aware of all of the acts of his co-conspirators in order to be held liable for these acts, provided that he is a knowing member of the conspiracy, and the acts of the co-conspirators were foreseeable and within the scope of the conspiracy.

14. Count One of the Indictment charges ZAPATA TABORDA with conspiracy to distribute cocaine in a place outside the United States, intending and knowing that the cocaine would be unlawfully imported into the United States. Regarding the offense in the Indictment, the United States must show that ZAPATA TABORDA came to an agreement with one or more persons to accomplish a common and unlawful plan as charged in the Indictment, that he knowingly and willfully became a member of such conspiracy, and that the object of the unlawful plan was to distribute five kilograms or more of cocaine in a place outside the United States, intending or knowing that the substance would be unlawfully imported into the United States. The maximum penalty for this offense is life imprisonment, a fine of

US$10,000,000, and a life term of supervised release.

15. The United States will prove its case against ZAPATA TABORDA through various types of evidence, including lawfully intercepted communications, physical evidence, and witness testimony. All of the criminal conduct alleged in the Indictment occurred after December 17, 1997.

### III. SUMMARY OF THE FACTS

16. Attached as **Exhibit D** is the original affidavit of Drug Enforcement Administration Special Agent Ethan J. Taylor, which provides additional information on the criminal activities and identification of ZAPATA TABORDA.

17. Based on my review of Special Agent Taylor's affidavit and the evidence in this case, I attest that the evidence indicates that Fabian Emilio ZAPATA TABORDA is guilty of the offense for which extradition is sought.

Francisco J. Navarro
Assistant U.S. Attorney
Eastern District of New York


SIGNED AND SUBSCRIBED TO BEFORE ME
THIS **22ⁿᵈ** DAY OF _October_ , 2019


,s/Sanket Bulsara
HON. SANKET BULSARA
U.S. Magistrate Judge
Eastern District of New York

## EXHIBIT LIST

Exhibit A      Relevant portions of the applicable legal provisions

Exhibit B      Certified copy of the Indictment, dated May 8, 2019

Exhibit C      Certified copy of the arrest warrant for Fabian Emilio ZAPATA TABORDA, dated May 8, 2019

Exhibit D      Affidavit of Drug Enforcement Administration Special Agent Ethan J. Taylor

                     Attachment 1   Colombian cédula of Fabian Emilio ZAPATA TABORDA

                     Attachment 2   Photograph of Fabian Emilio ZAPATA TABORDA

Exhibit A

**Exhibit A** contains the applicable portions of statutes describing the offenses with which Fabian Emilio ZAPATA TABORDA, alias "Milo" and "Milito," is charged, the statute of limitations, and the penalties he faces if convicted. Ellipses are used to indicate portions of the statutes that are omitted because these portions do not apply to the case against Fabian Emilio ZAPATA TABORDA, alias "Milo" and "Milito."

**Title 21, United States Code, Section 812**          **Schedules of controlled substances**

**(a) Establishment**
There are established five schedules of controlled substances, to be known as schedules I, II, III, IV, and V . . .;

**(c) Initial Schedules of Controlled Substances**

Schedules I, II, III, IV, and V shall ... consist of the following drugs or other substances. . .;

## Schedule II

(a) . . . any of the following substances whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis: . . .

(4) . . . cocaine, its salts, optical and geometric isomers, and salts of isomers . . . or any compound, mixture, or preparation which contains any quantity of any of the substances referred to in this paragraph. . . .

**Title 21, United States Code, Section 959**       **Possession, manufacture, or distribution of controlled substance**

(a) Manufacture or distribution for purpose of unlawful importation.

It shall be unlawful for any person to manufacture or distribute a controlled substance in schedule I or II . . . -

(1) intending that such substance or chemical will be unlawfully imported into the United States or into waters within a distance of 12 miles of the coast of the United States; or

(2) knowing that such substance or chemical will be unlawfully imported into the United States or into waters within a distance of 12 miles of the coast of the United States.

. . .

(d) Acts committed outside territorial jurisdiction of United States; venue

This section is intended to reach acts of manufacture or distribution committed outside the territorial jurisdiction of the United States. Any person who violates this section shall be tried in the United States district court at the point of entry where such person enters the United States, or in the United States District Court for the District of Columbia.

**(a) Unlawful acts**

Any person who –

> . . .

> > **(3)** contrary to section 959 of this title, manufactures, possesses with the intent to distribute, or distributes a controlled substance,

> shall be punished as provided in subsection (b) of this section.

**(b) Penalties**

> **(1)** In the case of a violation of subsection (a) of this section involving -

> > **(B)** 5 kilograms or more of a mixture or substance containing a detectable amount of . . .

> > > **(ii)** cocaine, its salts, optical and geometric isomers, and salts or isomers
> > > . . .

the person committing such violation shall be sentenced to a term of imprisonment of not less than 10 years or more than life ... a fine not to exceed the greater of that authorized in accordance with the provisions of title 18 or $10,000,000 ... a term of supervised release of at least 5 years in addition to such term of imprisonment.

Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

(a) In general.--Except as otherwise provided, a defendant who has been found guilty of an offense described in any Federal statute, including sections 13 and 1153 of this title, other than an Act of Congress applicable exclusively in the District of Columbia or the Uniform Code of Military Justice, shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

(b) Individuals.--An individual found guilty of an offense shall be sentenced, in accordance with the provisions of section 3553, to—

    (1) a term of probation as authorized by subchapter B;

    (2) a fine as authorized by subchapter C; or

    (3) a term of imprisonment as authorized by subchapter D.

        A sentence to pay a fine may be imposed in addition to any other sentence. A sanction authorized by section 3554, 3555, or 3556 may be imposed in addition to the sentence required by this subsection . . .

(a) In general.--Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

**Title 18, United States Code, Section 3238**          **Offenses not committed in any district**

The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought; but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender or of any one of two or more joint offenders, or if no such residence is known the indictment or information may be filed in the District of Columbia.

**Title 21, United States Code, Section 853**                    **Criminal forfeitures**

**(a) Property subject to criminal forfeiture**

Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law--

(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;

(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation. . .;

The court, in imposing sentence on such person, shall order, in addition to any other sentence imposed pursuant to this subchapter or subchapter II of this chapter, that the person forfeit to the United States all property described in this subsection. In lieu of a fine otherwise authorized by this part, a defendant who derives profits or other proceeds from an offense may be fined not more than twice the gross profits or other proceeds. . .;

**(p) Forfeiture of substitute property**

(1)      **In general**

Paragraph (2) of this subsection shall apply, if any property described in subsection (a), as a result of any act or omission of the defendant –

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property which cannot be divided without difficulty.

(2)     **Substitute property**

In any case described in any of subparagraphs (A) through (E) of paragraph (1), the court shall order the forfeiture of any other property of the defendant, up to the value of any property described in subparagraphs (A) through (E) of paragraph (1), as applicable.

Section 853 of this title, relating to criminal forfeitures, shall apply in every respect to a violation of this subchapter punishable by imprisonment for more than one year.

Exhibit B

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ MAY 0 8 2019 ★

BROOKLYN OFFICE

GMP:MMH
F. #2019R00690/OCDETF#NY-NYE-764

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

FABIAN EMILIO ZAPATA
TABORDA,
      also known as "Milo" and
      "Milito,"

                     Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. **CR 19 212**

(T. 21, U.S.C., §§ 853(a), 853(p),
959(c), 960(b)(1)(B)(ii), 963 and 970;
T. 18, U.S.C., §§ 3238 and 3551 et
seq.)

**MATSUMOTO, J.**

**GOLD, M.J.**

THE GRAND JURY CHARGES:

INTERNATIONAL COCAINE DISTRIBUTION CONSPIRACY

1.     In or about and between December 2013 and September 2014, both

dates being approximate and inclusive, within the extraterritorial jurisdiction of the United

States, the defendant FABIAN EMILIO ZAPATA TABORDA, also known as "Milo" and

"Milito," together with others, did knowingly and intentionally conspire to distribute a

controlled substance in one or more places outside the United States, to wit: Costa Rica,

Jamaica and Colombia, which offense involved a substance containing cocaine, a Schedule II

controlled substance, knowing and intending that such substance would be unlawfully

imported into the United States, contrary to Title 21, United States Code, Sections 959(a) and

960(a)(3).    The amount of cocaine attributable to the defendant as a result of his own

conduct, and the conduct of other conspirators reasonably foreseeable to him, was five kilograms or more of a substance containing cocaine.

(Title 21, United States Code, Sections 963, 960(b)(1)(B)(ii) and 959(c); Title 18, United States Code, Sections 3238 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

2.    The United States hereby gives notice to the defendant that, upon his conviction of the offense charged herein, the government will seek forfeiture in accordance with Title 21, United States Code, Sections 853(a) and 970, which require any person convicted of such offense to forfeit: (a) any property constituting, or derived from, any proceeds obtained directly or indirectly as the result of such offense, and (b) any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offense.

3.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

to seek forfeiture of any other property of the defendant up to the value of the forfeitable

property described in this forfeiture allegation.

(Title 21, United States Code, Sections 853(a), 853(p) and 970)

A TRUE BILL

_____
FOREPERSON

_____
RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

Exhibit C

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| United States of America | ) | CR 19 212 |
|---|---|---|
| v. | ) | Case No. |
| FABIAN EMILIO ZAPATA TABORDA | ) | |
| | ) | MATSUMOTO, J. |
| | ) | GOLD, M.J. |
| *Defendant* | ) | |

## ARREST WARRANT

To: Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)* FABIAN EMILIO ZAPATA TABORDA ,
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment ☐ Superseding Indictment ☐ Information ☐ Superseding Information ☐ Complaint
☐ Probation Violation Petition ☐ Supervised Release Violation Petition ☐ Violation Notice ☐ Order of the Court

This offense is briefly described as follows:

International cocaine distribution conspiracy, in violation of Title 21, United States Code, Sections 963, 959(c) and 960(b)(1)(B)(ii)

Date: _____05/08/2019_____

s/Peggy Kuo
_____
*Issuing officer's signature*

City and state: __Brooklyn, New York__

The Hon. Peggy Kuo, U.S. Magistrate Judge
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____ |
| _____ *Arresting officer's signature* |
| _____ *Printed name and title* |

Exhibit D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

FABIAN EMILIO ZAPATA TABORDA,
a.k.a. "Milo,"
a.k.a. "Milito"

Case No. CR-19-212

AFFIDAVIT IN SUPPORT OF
REQUEST FOR EXTRADITION

I, Ethan J. Taylor, being duly sworn, depose and state:

1.    I reside in the United States of America.

2.    I am a Special Agent with the Drug Enforcement Administration (DEA) in New York, New

      York, and have been employed as such for approximately two and one-half years.

3.    The DEA is one of the agencies within the U.S. government responsible for the

      enforcement of federal drug laws.  As a DEA Special Agent, I have personally conducted

      and participated in many investigations that have resulted in the arrests and convictions of

      people responsible for trafficking in drugs.

4.    Based on my training and experience as an agent with the DEA, I am familiar with the

      means and methods that drug traffickers use to import illicit drugs, and I am familiar with

      the support and assistance that drug trafficking organizations require to conduct their illegal

      activities.  I am also knowledgeable about the criminal statutes of the United States, in

      particular those which relate to drug and money laundering offenses.

5.    In the course of my official duties, I have become familiar with the charges and evidence

      against Fabian Emilio ZAPATA TABORDA, alias "Milo" and "Milito" (ZAPATA

1

TABORDA), in the case entitled <u>United States of America v. Fabian Emilio Zapata</u> <u>Taborda</u>, Case Number CR-19-212, which arose from an investigation into a drug trafficking organization of which ZAPATA TABORDA is a member.

6. I am familiar with the investigation, evidence, and witness statements in this case. The facts summarized below are not a full recitation of all of the statements and evidence in this case, but only the evidence offered in support of this extradition request.

## I. SUMMARY

7. Since approximately 2013, the DEA has been investigating a drug trafficking and money laundering organization led by ZAPATA TABORDA. The investigation revealed that ZAPATA TABORDA supplied cocaine to numerous drug trafficking organizations in Colombia, and that the cocaine was transported in multi-kilogram shipments for ultimate distribution in the United States.

8. During the investigation, law enforcement agents seized drug proceeds and hundreds of kilograms of cocaine associated with ZAPATA TABORDA.

## II. EVIDENCE

9. The evidence against ZAPATA TABORDA includes, but is not limited to, witness testimony, lawfully intercepted communications, physical surveillance, and seizures of cocaine.

10. Several witnesses, including Witness 1 (W-1) and Witness 2 (W-2), have provided information about ZAPATA TABORDA's drug trafficking activity. The information collected from W-1 and W-2 has been corroborated by other evidence, including lawfully intercepted communications and seizures of cocaine.

11. W-1 was a transportation facilitator and manager for cocaine shipments that passed through areas controlled by the drug trafficking organization (DTO) of which W-1 was a member. According to W-1, ZAPATA TABORDA supplied cocaine to the DTO for its drug shipments from Colombia, with the ultimate destination being the United States. W-1 further stated that cocaine supplied by ZAPATA TABORDA usually had the marking "FEF."

12. W-2 was a high-ranking member of the DTO based in the coastal areas of Antioquia, Colombia. W-2 stated that ZAPATA TABORDA supplied cocaine to the DTO. W-2 further stated that, between approximately December 2013 and September 2014, ZAPATA TABORDA paid a "tax" or a set fee to the DTO for every kilogram of cocaine that ZAPATA TABORDA manufactured and stored in W-2's area of control.

13. Between approximately April 2014 and approximately May 2014, ZAPATA TABORDA supplied cocaine that was shipped from Colombia to Jamaica, with the ultimate destination being the United States. Specifically, on or about April 7, 2014, Jamaican law enforcement officials arrested two individuals in Jamaica with approximately $533,284 in U.S. currency in their possession. Lawfully intercepted communications of ZAPATA TABORDA and the DTO indicated that a cocaine shipment of between 30 and 100 kilograms of cocaine was being sent to one of the individuals on a cargo container ship (the MV). Approximately one month later, on or about May 6, 2014, law enforcement officials in Jamaica seized approximately 33 kilograms of cocaine from the MV in Kingston, Jamaica. The MV had arrived in Kingston from Cartagena, Colombia.

14. Based on my training, experience and knowledge of the investigation, I know that when bulk sums of U.S. currency are used to pay for cocaine shipments in countries outside of

3

the United States, such as Jamaica, the shipments are intended to be eventually imported into the United States. Accordingly, I believe that the bulk sum of U.S. currency seized in April 2014 was intended to pay for the cocaine seized from the MV in May 2014.

15. Further, in or about May 2014, based on judicially authorized communications intercepts of ZAPATA TABORDA and the DTO, law enforcement authorities learned that a fishing vessel (the FV) would be transporting several containers from Turbo, Colombia, to Limon, Costa Rica, including a specific container (Container 1) in which cocaine would be hidden. On or about May 9, 2014, Costa Rican law enforcement officials seized approximately 307 kilograms of cocaine from the FV. The cocaine was contained in brick-shaped packages wrapped in black tape and clear plastic, and was located in suitcases hidden in Container 1. The packaging and cocaine had the marking, among others, of "FEF 3," the same marking that W-1 identified as the marking ZAPATA TABORDA used on the cocaine he provided to W-1's DTO.

### III. IDENTIFICATION

16. Fabian Emilio ZAPATA TABORDA, alias "Milo" and "Milito," is a citizen of Colombia, born on March 24, 1969, in Colombia. His Colombian cédula number is 98,575,379. He is described as a Hispanic male, approximately 175 centimeters in height, weight unknown.

17. Attached to this affidavit as **Attachment 1** is the Colombian cédula of Fabian Emilio ZAPATA TABORDA. Law enforcement authorities in Colombia have confirmed that the person depicted in **Attachment 1** is the person arrested on the provisional arrest warrant issued in this case. Also attached to this affidavit as **Attachment 2** is a photograph of Fabian Emilio ZAPATA TABORDA. W-1 and law enforcement authorities in Colombia have identified the person in **Attachment 2** as ZAPATA TABORDA, whose criminal

activities are described in this affidavit. In addition, law enforcement authorities in Colombia have confirmed that the person depicted in **Attachment 2** is the person arrested on the provisional arrest warrant issued in this case.

ETHAN J. TAYLOR
Special Agent
Drug Enforcement Administration

SIGNED AND SUBSCRIBED TO BEFORE ME
THIS 22nd DAY OF October , 2019

s/Sanket Bulsara

HON. SANKET BULSARA
U.S. Magistrate Judge
Eastern District of New York

Attachment 1



Registraduría ... Estado Civil
Dirección ... ional de ... tificación
Infor ... bre Co ... Web

cct_masivo
Apr 18, 2013 11:55 AM
172.20.43.50

**Informe de la ... de la Consulta**



FISCALIA
GENERAL DE LA NACIÓN



| | |
|---|---|
| Número de Documento (NUIP): | 98,575,379 |
| Número de Documento (NIP): | |
| Número de Preparación: | 2040042263 |
| Primer Apellido: | ZAPATA |
| Particula: | Ninguna |
| Segundo Apellido: | TABORDA |
| Primer Nombre: | FABIAN |
| Segundo Nombre: | EMILIO |
| Sexo: | Masculino |
| Fecha de Nacimiento: | 24/03/1969 |
| Lugar de Nacimiento: | CHIGORODO - ANTIOQUIA |
| País de Nacimiento: | COLOMBIA |
| Departamento de Nacimiento: | ANTIOQUIA |
| nicipio de Nacimiento: | CHIGORODO |
| Estatura: | 175 |
| Fecha de Preparación: | 10/02/2009 |
| Departamento de Preparación: | ANTIOQUIA |
| Municipio de Preparación: | MEDELLIN |
| Zona de Preparación: | ZZ BELEN |
| Fecha de Expedición: | 26/06/1987 |
| Departamento do Expedición: | ANTIOQUIA |
| Municipio de Expedición: | BELLO |
| Zona do Expedición: | BELLO |
| Vigencia: | VIGENTE |
| Clase de Expedición: | Renovación CC |
| Motivo de Rectificación: | |

| | |
|---|---|
| Grupo Sanguineo y Factor RH: | O+ |
| Código de Señales Particulares: | NINGUNA |
| Dirección de Residencia: | CL 18 81 81 |
| Ciudad de Residencia: | MEDELLIN |
| Teléfono: | 3453461 |
| Tipo del Documento Base: | Cédula de Ciudadanía |
| Número del Documento Base: | 0098575379 |
| Notaria del Documento Base: | BELLO |
| Huella Impresa: | INDICE DERECHO |
| Número de Impresión: | 0024038617A 1 |
| Fecha de Fabricación: | 22/09/2010 |
| Validez: | Valida |
| Estado de la versión: | Actual |



**Pulgar Derecho**



**Indice Derecho**



**Medio Derecho**



**Anular Derecho**



**Meñique Derecho**



**Pulgar Izquierdo**



**Indice Izquierdo**



**Medio Izquierdo**



**Anular Izquierdo**



**Meñique Izquierdo**

Attachment 2



41